IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BINITA L. COOK, et al.,        )
                          )
     Plaintiffs,         )
                          )
v.                       ) CIVIL ACTION NO. 2:01cv1425-ID
                       )         (WO)
BOYD F. CAMPBELL, et al.,    )
                          )
     Defendants.        )

<u>MEMORANDUM OPINION AND ORDER</u>

## I.  INTRODUCTION

Plaintiffs in this litigation are former employees of Central Alabama Home Health Services, Inc. ("Central Alabama"), who during their employment participated in Central Alabama's employee stock ownership plan ("ESOP").  Plaintiffs claim that, through deceptive tactics, they were persuaded to voluntarily terminate their employment in order to participate in Central Alabama's career transition assistance plan ("CTAP"), a plan which Central Alabama implemented as an alternative to laying off employees.  The deceptive tactics included an alleged scheme involving the sale of overvalued Central Alabama stock to the ESOP and, relatedly, alleged false representations concerning the value of Plaintiffs' vested shares of ESOP stock which Plaintiffs would receive as a lump-sum payment pursuant to their CTAP election.  Asserting various breaches of fiduciaries duties and fraudulent conduct by the ESOP trustee, who is Defendant Boyd

1

Campbell ("Campbell"), Plaintiffs allege violations of state law, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-1968, and the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1000-1461 ("ERISA").

Pending before the court is Campbell's motion for judgment on the pleadings. (Doc. No. 37.)  Therein, Campbell alleges, among other grounds, that Plaintiffs do not have standing to bring a RICO claim, that Plaintiffs impermissibly attempt to revive state-law claims which this court previously dismissed as preempted by ERISA, and that there is no provision under ERISA which would allow Plaintiffs, in their individual capacities, to hold Campbell personally liable for legal relief.  After careful consideration of the arguments of counsel and the applicable law, the court finds that Campbell's motion is due to be granted in part and denied in part.

## II.  JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question).  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations of both.

## III.  STANDARD OF REVIEW

Judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is appropriate when "no issues of material fact exist, and the movant is entitled to judgment as a matter of law."  Ortega v. Christian, 85 F.3d 1521, 1524-25 (11th Cir.

2

1996).  When reviewing a judgment on the pleadings, the court must accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. Id.  A judgment on the pleadings is limited to consideration of "the substance of the pleadings and any judicially noticed facts."  Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 137 F.3d 1293, 1295 (11th Cir. 1998).  "If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint."  Horsley v. Rivera, 292 F.3d 695, 700 (11th Cir. 2002).

## IV.  PROCEDURAL BACKGROUND

In October 2001, Plaintiffs filed a multi-count complaint against Central Alabama and Campbell in the Circuit Court of Montgomery County, Alabama.[1]  In their state-court complaint, Plaintiffs asserted claims against Central Alabama and against Campbell, individually and as trustee of the ESOP, alleging violations of RICO and state law (including fraud, civil conspiracy, breach of contract, conversion, and securities violations).  (Compl. (Doc. No. 1).)  Central Alabama and Campbell timely removed the case to the United States District Court for the Middle District of Alabama on the basis of federal question jurisdiction, namely, ERISA preemption and RICO.  (Not. of Removal (Doc. No. 1).)

---

[1] As discussed below, Central Alabama is no longer a party to this lawsuit.

In January 2002, Plaintiffs moved the court to remand this lawsuit to state court (Doc. No. 8), but the court denied the motion on the ground that the complaint expressly stated a RICO claim over which the court properly exercised federal question jurisdiction. (Doc. No. 14.)  In July 2002, Plaintiffs unsuccessfully tried again to persuade the court to remand this lawsuit by requesting dismissal of their RICO claim (Doc. No. 16); however, the court found that the ESOP and CTAP were employee welfare benefits plans governed by ERISA and that, consequently, ERISA preempted Plaintiffs' state-law claims.  (Doc. No. 19.)  The court rejected Plaintiffs' argument that the CTAP provided few benefits beyond a lump-sum payment, thus, requiring none of the ongoing administration generally involved in ERISA plans.  (Id. at 2-3.)  The court explained:

> The court accepts as true that Plaintiffs were participants in Defendants' ESOP plan, and that, upon notification that they were to be laid off, elected to receive benefits pursuant to Defendants' CTAP plan.  In effect, then, the CTAP plan was a mechanism to provide severance payments already due under the ESOP plan.  The Supreme Court has held that "a one-time, lump-sum payment triggered by a single event requires no administrative scheme" of the type envisioned by Congress when enacting ERISA.  Ft. Halifax Packing Co. v. Coyne, 482 U.S. 1, 12 (1987).  In the present case, however, Defendants did not establish the plan to protect its employees' interest in the event of some "contingency that may never materialize."  Id.  Rather, the CTAP was established to provide employees with sustained benefits in the face of a certain event.

> More significant, however, is the intimate interrelationship between the ESOP plan and the CTAP plan, particularly in light of Plaintiffs' claims.  While Plaintiffs were due certain benefits pursuant to the CTAP, these were benefits that had already accrued under the ESOP.  (Resp. Ex. 3 at 2.)  The allegations in the Complaint, in turn, relate directly to management of the ESOP funds.  (Compl. ¶¶ 16-24, 27-30.)  Indeed, the allegations of fraud and fiduciary mismanagement appear to refer to actions which took place prior to Plaintiffs' election to pursue the CTAP option.  (Id.)  Plaintiffs

4

rightly have not disputed that the ESOP is governed by ERISA.  See 29 U.S.C. § 1107(d)(6).  However, they have not persuaded the court why ERISA applies to the ESOP yet it should not likewise apply to the mechanism by which ESOP benefits were distributed.  ERISA was enacted to provide uniform standards to which employers must adhere in the administration of employee benefits; this purpose is defeated when different plans are subjected to a "patchwork scheme of regulation."  Ft. Halifax, 482 U.S. at 11.  The court finds that Plaintiffs' allegations pertain to the ESOP as much as they do to the CTAP.  Each claim arising under Alabama law is akin to relief available under ERISA, so the court finds that such claims are preempted.

(Id. at 3-4.)

Based upon ERISA preemption, which also conferred federal question jurisdiction, the court denied the motion to remand and left in place the RICO claim, "see[ing] no reason" to dismiss the claim on the ground asserted by Plaintiffs.  (Id. at 2, 4.)  The court, therefore, directed Plaintiffs to file an amended complaint to allege recovery under ERISA.  (Id. at 4.)

On September 3, 2002, Plaintiffs filed an amendment to their original complaint. (1st Am. Compl (Doc. No. 21).)  Rather than converting the state law claims to ERISA claims, as directed by the court, Plaintiffs reasserted their state law claims and added eight additional ERISA counts, stating as follows:  "Plaintiffs do not intend to waive any of their original causes of action under state law which were pled in their Complaint filed in the Circuit Court of Montgomery County, Alabama."  (Id. at 1.)

On August 30, 2002, Central Alabama notified the court that, on August 23, 2002, it filed a Chapter 11 bankruptcy petition.  As a result, the court stayed this action during

the pendency of Central Alabama's bankruptcy proceedings.  (Doc. Nos. 22, 27.)  The

stay was lifted on August 25, 2005.  (Doc. No. 27.)

Subsequently, Central Alabama and Campbell filed a joint motion for summary

judgment which related solely to the bankruptcy discharge issue.  The summary judgment

filing was followed by a motion for judgment on the pleadings submitted by Campbell.

(Doc. Nos. 35, 41.)   Plaintiffs did not oppose the entry of summary in Central Alabama's

favor because they agreed that all of Plaintiffs' claims against Central Alabama were

discharged pursuant to the confirmation order entered in the Chapter 11 bankruptcy

proceedings.  Plaintiffs, however, did challenge the motion for summary judgment as it

related to Campbell.  The court denied the motion for summary judgment as premature on

the claims asserted against Campbell, concluding that there had been inadequate time for

discovery due to the stay entered during the pendency of Central Alabama's bankruptcy

proceedings.  Pending is Campbell's motion for judgment on the pleadings.  (Doc. No.

41.)

## V.  FACTS

As alleged in the complaint, as amended, the facts are as follows.[2]  In 1993, Central Alabama adopted an employee stock ownership plan ("ESOP") and created a trust to which Central Alabama agreed to make annual contributions in the form of cash and Central Alabama stock.  (Compl. at 4 (¶ 16) (Doc. No. 1).)  The primary purpose of the ESOP, as represented to Central Alabama employees, was to enable participating employees to share in the growth and prosperity of the company and to provide participants with an opportunity to accumulate capital for retirement.  (Id.)

Central Alabama employees became eligible to participate in the ESOP after three months of employment.  (Id. at 4 (¶ 17).)  Once an employee attained eligibility status, Central Alabama allocated contributions to the individual's employee account according to that employee's compensation.  (Id.)  At the time the ESOP was adopted, each eligible employee was to receive the same vesting schedule values as he or she had earned in Central Alabama's pension plan.  (Id. at 4-5 (¶ 18).)  Each eligible employee was to receive the vested portion of his or her account at either termination, disability, death or retirement.  (Id.)

Campbell and Central Alabama represented to Plaintiffs and other employee-participants that the ESOP monies were being held in trust for their benefit.  (Id. at 5

_____

[2] These facts are recited almost verbatim from the section of Plaintiffs' original complaint titled, "Factual Background," and are assumed as true for purposes of ruling on the present motion.

(¶ 19).)  Central Alabama designated Campbell as the trustee for the ESOP, and, "[a]t all times material" to this action, Campbell served in that capacity.  (Id. ¶¶ 14, 19.) Campbell and Central Alabama also represented to Plaintiffs and other employee-participants that an outside appraiser would evaluate annually the fair market value of the stock contributions to the trust.  (Id. ¶ 20.)  It also was represented to Plaintiffs and other employee-participants that these annual valuations would be conducted pursuant to generally accepted valuation methods.  (Id.)

As of June 30, 1996, the ESOP held assets of $5,163,967.00.  (Id. ¶ 21.)  Central Alabama represented that, at that time, each share of Central Alabama stock was worth $9.60.  (Id.)

In May 1997, Central Alabama announced that its owner and President, George E. Hutchinson ("Hutchinson"), would be selling 80 percent of his Central Alabama stock to the ESOP.  (Id. ¶ 22.)  Hutchinson retained 20 percent of the Central Alabama stock.  (Id. ¶ 23.)  Plaintiffs were informed by Central Alabama and Campbell that Hutchinson's sale of 80 percent of his stock to the ESOP would increase the value of the ESOP shares. (Id. at 5 (¶ 24)); (id. at 7 (¶ 3).)  Central Alabama altered the ESOP and pension plan vesting schedule so that employees with five years of service became fully vested.  (Id. at 5 (¶ 24).)

Also, in May 1997, Central Alabama announced that it would have to downsize because of changes within the healthcare industry.  (Id. at 6 (¶ 25).)  To avoid employee layoffs, Central Alabama implemented a plan which it called the career transition

assistance plan ("CTAP").  (Id.)  Described as "a creative alternative to downsizing," CTAP was a one-time severance pay plan made available to qualifying Central Alabama employees.  (Id.)

Central Alabama advised that those employees who did not elect CTAP would have no guarantees for job security and that the company did not anticipate offering CTAP in the future.  (Id. ¶ 26.)  Central Alabama also represented that employees who elected to participate in CTAP would be terminated, but that these employees would receive their vested shares of ESOP stock within one year of their election.  (Id. ¶ 27.) Relying upon Central Alabama's promises, approximately 125 employees, including Plaintiffs, terminated their employment with the expectation of receiving shares of ESOP stock equal to or exceeding the value of their shares as determined at the then last year-end valuation.  (Id. at 6 (¶ 28).)

In November and December of 1999, Plaintiffs received their respective shares of ESOP monies, pursuant to their CTAP election.  (Id. at 7 (¶ 30).)  These distributions, however, were small fractions of the amounts which had been evaluated as of June 30, 1996.  (Id.)  In this regard, Plaintiffs point out that, in May 1997, Hutchinson was allowed to sell his Central Alabama stock to the ESOP for a price of $9,290,000, but that the same stock as of June 30, 1999, was valued at $9,973.  (Id.)  Plaintiffs then realized that they were the victims of fraud.  (Id. at 6-7 (¶¶ 29-30).)  Namely, the reverberating themes which are illuminated in Plaintiffs' pleadings are that Plaintiffs were fraudulently enticed to terminate their employment with Central Alabama based upon false assurances

concerning the value of their shares of ESOP stock; that those values were artificially inflated based upon improper valuations in order to deceive Plaintiffs into making a CTAP election; that Campbell and others are to blame for the false assurances, the overvalued ESOP stock and the rapid diminution in the stock's value.  (Id.)

## VI.  DISCUSSION

### A.  Count 5:  RICO Claim

In Count V, asserting a civil RICO claim against Campbell, Plaintiffs allege that the sale of Central Alabama's stock by Hutchinson to the ESOP in May 1997 was "fraudulent" and was accomplished through "telephone calls and through the United States Post Office," in violation of 18 U.S.C. § 1962.  (Compl. at 19 (¶ 4), 11 (¶ 22) (Doc. No. 1)); (Doc. No. 44 at 11.)  Plaintiffs allege mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343 as the predicate acts which support their RICO claim, (Compl. at 19 (¶ 7)), contending specifically that Campbell's "sale of stock to Plaintiffs' ESOP was a scheme to defraud for the purpose of obtaining money pursuant to 18 U.S.C. § 1341 and § 1343."  (Id. at 20 (¶ 8).)

The RICO Act imposes civil liability on individuals engaged in "a pattern of racketeering activity."  18 U.S.C. § 1962(a)-(d).  In simplest terms, to state a civil RICO claim under 18 U.S.C. § 1962, a plaintiff must allege "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  Durham v. Business Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting Sedima S.P.R.L. v. Imrex Co., Inc., 473

U.S. 479, 496 (1985)).  As a prerequisite to bringing a civil RICO claim, however, a

plaintiff must demonstrate that he or she has standing to sue.  See id.

Among other arguments, Campbell asserts that Plaintiffs lack standing to bring a

RICO claim, contending that "[a]ny harm to the Plaintiffs is contingent on, and derivative

of, harm to the Company or the ESOP," and, thus, is too indirect of an injury to confer

RICO standing.  (Doc. No. 42 at 11); (Doc. No. 45 at 5-6.)  Plaintiffs, on the other hand,

assert that so long as the injury is "traceable to the conduct complained of," a plaintiff

should not be denied standing.  (Doc. No. 44 at 13.)  As explained below, the court

agrees with Campbell that Plaintiffs lack standing to bring a RICO claim, but for a

different reason.

Campbell and Plaintiffs correctly state that 18 U.S.C. § 1964(c) confers standing

to bring a civil RICO claim only to "[a]ny person injured in his business or property by

reason of a violation of Section 1962 of this chapter[.]"  18 U.S.C. § 1964(c); (Compl.

at 18-19 (¶ 5) (Doc. No. 1).)  In relying upon 18 U.S.C. § 1964(c), however, the parties

have omitted any reference to or discussion of § 107 ("the RICO Amendment") of the

Private Securities Litigation Reform Act of 1995 ("PSLRA"), which amended 18 U.S.C.

§ 1964(c) to eliminate securities fraud as a predicate act for a private cause of action

under RICO.  Since 1995, § 1964(c) has read as follows:

> Any person injured in his business or property by reason of a violation of
> section 1962 of this chapter may sue therefor in any appropriate United
> States District Court and shall recover threefold the damages he sustains
> and the cost of the suit, including a reasonable attorney's fee, *except that no
> person may rely upon any conduct that would have been actionable as*

*fraud in the purchase or sale of securities to establish a violation of section 1962.*  The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date the conviction becomes final.

18 U.S.C. § 1964(c) (emphasis added).

In <u>Bald Eagle Area School District v. Keystone Financial, Inc.</u>, the Third Circuit

succinctly summarized the purpose and effect of the amendment on RICO litigation:

Prior to 1995, a private plaintiff could assert a civil RICO claim for securities law violations sounding in "garden variety" fraud.  <u>See</u> <u>Sedima S.P.R.L. v. Imrex Co., Inc.</u>, 473 U.S. 479, 504-05 . . . (1985) (Marshall, J., dissenting).  Inasmuch as "fraud in the sale of securities" was a predicate offense in both criminal and civil RICO actions, <u>Id.</u> at 504, . . ., plaintiffs regularly elevated fraud to RICO violations because RICO offered the potential bonanza of recovering treble damages.  However, in 1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), Pub.L. No. 104-67, 109 Stat. 737 (1995).  The PSLRA amended RICO by narrowing the kind of conduct that could qualify as a predicate act.  Section 107 of the PSLRA (known as the "RICO Amendment") amended 18 U.S.C. § 1964(c)[.] . . .

The Conference Committee Report accompanying § 107 states that the amendment was intended not simply "to eliminate securities fraud as a predicate offense in a civil RICO action," but also to prevent a plaintiff from "plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud."  H.R. Conf. Rep. No. 104-369, at 47 (1995).

189 F.3d at 327 (3rd Cir. 1999); <u>see also</u> <u>*In re* Enron Corp. Sec., Derivative, & ERISA</u>

<u>Litig.</u> ("<u>Enron</u>"), 284 F. Supp.2d 511, 618 (S.D. Tex. 2003).  Additionally, "[t]he RICO

Amendment bars claims based on conduct that could be actionable under the securities

laws even when the plaintiff, himself, cannot bring a cause of action under the securities

laws.  The language of the statute does not require that the same plaintiff who sues under

RICO must be the one who can sue under securities laws."  <u>Enron</u>, 284 F. Supp.2d

at 620; <u>see</u> <u>also</u> <u>Howard v. America Online Inc.</u>, 208 F.3d 741, 749-50 (9th Cir. 2000).

To determine whether Plaintiffs' proposed RICO claim is "actionable" under

federal securities laws, it is necessary for the court to recite the relevant law in this arena.

Section 10(b) of the Securities Exchange Act of 1934 ("SEC"), codified at 15 U.S.C.

§ 78j(b), and Rule 10b-5, codified at 17 C.F.R. § 240.10b-5, "are directed at fraud '*in*

*connection with* the purchase or sale' of securities."  <u>Bald Eagle</u>, 189 F.3d at 329-30

(emphasis in original).  Section 10(b) makes it unlawful for any person

> [t]o use or employ, in connection with the purchase or sale of any security
> registered on a national securities exchange or any security not so registered
> . . . any manipulative or deceptive device or contrivance in contravention of
> such rules and regulations as the Commission may prescribe as necessary or
> appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).  Rule 10b-5, in turn, provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any
> means or instrumentality of interstate commerce, or of the mails or of any
> facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a
> material fact necessary in order to make the statements made, in the light of
> the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or
> would operate as a fraud or deceit upon any person, in connection with the
> purchase or sale of any security.

17 C.F.R. § 240.10b-5.

To maintain a § 10(b) or Rule 10b-5 fraud action, a plaintiff must establish (1) a false statement or omission of material fact in connection with the purchase or sale of a security; (2) made with scienter; (3) upon which the plaintiff justifiably relied, (4) that proximately caused the plaintiff's injury, and (5) the involvement of interstate commerce, the mails, or a national securities exchange.  See Robbins v. Koger Properties, Inc., 116 F.3d 1441, 1447 (11th Cir. 1997); Anderson v. Transglobe Energy Corp., 35 F. Supp.2d 1363, 1368 (M.D. Fla. 1999); S.E.C. v. Gane, No. 03-61553-CIV-SEITZ, 2005 WL 90154, *11 (S. D. Fla. 2005).

Having examined the allegations in the complaint as a whole in the light most favorable to Plaintiffs, it is readily apparent that Plaintiffs' allegations fit within the rubric of a § 10(b)/Rule 10b-5 claim.  Consistent with elements (1) - (4) above, Plaintiffs aver that Campbell, as the ESOP trustee, represented that the sale of Central Alabama stock to the ESOP would increase the value of the ESOP shares to which Plaintiffs ultimately would be entitled pursuant to their CTAP elections, that Campbell knew that these representations were false and that Plaintiffs relied upon Campbell's representation in making CTAP elections.  (Compl. at 13-14 (Doc. No. 1) (¶¶ 2(d), 3), 12-13 (¶¶ 29-30).)  Moreover, Plaintiffs allege that they were injured because, in 1999, when they received their respective vested shares of ESOP stock pursuant to their prior CTAP elections, the value of the shares had plummeted, and, consequently, the monetary distributions they received were "small fraction[s] of the amounts which had been

14

evaluated as of June 30, 1996." (Id. at 12-13 (¶¶ 29-30).)  Plaintiffs further allege that

these injuries were proximately caused by Campbell's misrepresentations.  (Id. 5 (¶ 5).)

Regarding, the fifth element, Plaintiffs allege that the "fraudulent sales of [Central

Alabama's] stock" by Hutchinson to the ESOP in May 1997 was accomplished through

"telephone calls and through the United States Post Office," in violation of 18 U.S.C.

§ 1962.  (Id. at 19 (¶ 4); id. at 11 (¶ 22)); (Doc. No. 44 at 11.)  Plaintiffs allege mail fraud

under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343 as the predicate acts

which support their RICO claim, (see id. at 19 (¶ 7)), contending specifically that

Campbell's "sale of stock to Plaintiffs' ESOP was a scheme to defraud for the purpose of

obtaining money pursuant to 18 U.S.C. § 1341 and § 1343." (Id. at 20 (¶ 8).)  These

averments demonstrate that the RICO predicate offenses are based upon fraudulent

activity which occurred in connection with the sale of Hutchinson's Central Alabama

stock to the ESOP.  In other words,  although Plaintiffs have alleged predicate acts of

mail and wire fraud, the court finds that the conduct upon which Plaintiffs rely to hold

Campbell liable under RICO is actionable as securities fraud and, thus, falls within the

RICO amendment, thereby divesting Plaintiffs of standing to allege a private cause of

action under RICO.[3]  The RICO claim, therefore, is due to be dismissed with prejudice.[4]

## B.  Counts 1 - 4 and 6:  Preempted State Law Claims

In its order of August 16, 2002 (Doc. No. 19), the court ruled that Plaintiffs' state

law claims in Count 1 - 4 and 6 of the original complaint were preempted by ERISA.  In

the same order, the court directed Plaintiffs to file an amended complaint to allege an

ERISA claim(s).  (Doc. No. 19.)  Plaintiffs, however, did not substitute ERISA claims for

the state law claims, but rather supplemented the original complaint by filing a pleading,

titled "First Amendment to Complaint," which incorporated by reference the state-law

claims and added eight ERISA claims.  Plaintiffs' First Amendment to Complaint

contravenes both the court's order of August 16, 2002, and this District's local rules for

the filing of amendments.  See M.D. ALA. L.R. 15.1 ("Any amendment to a pleading,

whether filed as a matter of course or upon a motion to amend, must, except by leave of

---

[3] The court notes that there is allegation or assertion that Campbell was "criminally convicted in connection with the [alleged] fraud."  18 U.S.C. § 1964(c).

[4] The court concurs with Campbell that the complaint, as amended, is far from constituting a model of clarity.  However, because the court disposes of the RICO count based upon Plaintiffs' lack of standing, the court need not, and declines to, decide whether Plaintiffs have complied with the requirements of Rule 9(b) in pleading their RICO count. See Fed. R. Civ. P. 9(b).

court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference.").

Plaintiffs now ask the court to reconsider its ruling on ERISA preemption.  (Doc. No. 44 at 7-11.)  The court carefully has considered the arguments of counsel, but finds therein no basis to alter its prior ruling.  Plaintiffs have not relied upon newly-discovered evidence, nor have they demonstrated an intervening change in controlling law, manifest injustice, or clear error.  See Richard v. United States, 67 F. Supp.2d 1321, 1322 (M.D. Ala. 1999).  Accordingly, the court finds that Plaintiffs' request for reconsideration is due to be denied and that Counts 1, 2, 3, 4 and 6 are due to be dismissed, yet again, on the ground that the state law claims are preempted by ERISA.

### C.  Counts 7-14:  ERISA Claims

The court now considers the viability of Plaintiffs' ERISA claims.  Plaintiffs' ERISA claims are set out in their "First Amendment to Complaint."  (Doc. No. 21.)  In Counts 7-12 of the First Amendment to Complaint, Plaintiffs allege that Campbell, as the ESOP trustee, breached his fiduciary duties owed to Plaintiffs by

(1)     failing "to provide benefits as represented to Plaintiff," (1st Am. Compl. at 2, Count 7, (¶ 4 ));

(2)     "by failing to provide a severance plan to Plaintiffs pursuant to Defendant['s] representations," (id. at 2, Count 8 (¶ 2));

17

(3)    "by failing to perform his duties in accordance with the documents and instruments governing Plaintiffs' employee welfare benefits plans," namely, the ESOP and CTAP (id. at 3, Count 9 (¶ 2));

(4)    "by failing to act prudently and solely in the interest of the plan participants and beneficiaries by, among other things, failing to conduct a good faith independent investigation of the buyout transactions involving the stock of George E. Hutchinson to determine whether the transactions were fair to the ESOP" and "by permitting the ESOP to purchase the Hutchinson shares for more than adequate consideration," (id. at 3, Count 10 (¶¶ 2-3));

(5)    "by participating knowingly in, or knowingly undertaking to conceal, acts or omissions of other fiduciaries, including, but not limited to, George E. Hutchinson and/or Central Alabama Home Health Services, while knowing that such acts and/or omissions constituted a breach of fiduciary duty," (id. at 4, Count 11 (¶ 2)); and

(6)    "by conspiring with Central Alabama . . . and George Hutchinson to knowingly and significantly deceive Plaintiffs and others" and by, thereafter continuing to suppress and misrepresent facts "to prevent Plaintiffs from learning the truth about their benefits," (id. at 4, Count 12, (¶¶ 2-3).)

In Counts 7-12, Plaintiffs do not cite the ERISA statutory provision upon which they base their claims for breaches of fiduciary duties.  In Count 13, however, Plaintiffs

seek relief in the form of equitable estoppel and rely expressly upon § 502(a)(3)(B).  See 29 U.S.C. § 1132(a)(3)(B).  Namely, Plaintiffs assert that, because they relied to their detriment on Campbell's false representations concerning the benefits under the severance plan, Campbell "is equitably estopped pursuant to 29 U.S.C. § 1132(a)(3)(B) to deny that he promised Plaintiffs severance benefits."  (1st Am. Compl. at 5 (¶¶ 2, 3).)  Finally, Count 14 contains a request for attorney's fees and costs under ERISA, pursuant to 29 U.S.C. § 1132(g)(1).[5]

Campbell contends that Plaintiffs have failed to state a claim under any of ERISA's civil remedies provisions, namely, § 502(a)(1)(B), § 502(a)(2) and § 502(a)(3).  The court addresses these arguments in turn.

### 1.  Relief under § 502(a)(1)(B)

Section 502(a)(1)(B) provides that a "participant or beneficiary" may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  In the First Amendment to Complaint, however,

---

[5] The court observes that Plaintiffs request attorney's fees and costs in their prayer for relief and also in a separate count (Count 14).  Section 1132(g)(1) permits the court to award "a reasonable attorney's fee and costs of action to either party," 29 U.S.C. § 1132(g)(1), but a request for attorney's fees is not a separate cause of action.  The request is more appropriately included as part of a plaintiff's prayer for relief.  The court finds that, as a separate count, Count 14 is due to be dismissed as unnecessary and redundant.

Plaintiffs have not cited § 502(a)(1)(B).  Liberally construing the First Amendment to

Complaint and given that, in their prayer for relief, Plaintiffs "seek benefits due them

under their severance plan," (1st Am. Compl. at 6 (Doc. No. 21)), the court concludes, for

the reasons to follow, that § 502(a)(1)(B) is one of the statutory provisions under which

Plaintiffs seek relief.

Campbell contends that, if Plaintiffs seek payment of benefits under

§ 502(a)(1)(B), any such claim fails because Campbell is not a proper Defendant.

Namely, Campbell contends that a claim to enforce the terms of an ERISA plan lies only

against the plan itself.  (Doc. No. 42, citing 29 U.S.C. § 1132(d); Doc. No. 45 at 7.)

Accordingly, Campbell argues that "to the extent Plaintiffs are seeking to hold the Trustee

[i.e., Campbell] personally liable to pay any benefits under the Plan, such a remedy fails

as a matter of law."  (Doc. No. 42 at 15.)  In support of his argument, Campbell relies

upon the Eighth Circuit's opinion in Hall v. LHACO, Inc., 140 F.3d 1190 (8th Cir. 1998),

but the court finds that his reliance is misplaced because the Eleventh Circuit takes a

position contrary to the one espoused in Hall by the Eighth Circuit.

In Hall, relying upon ERISA § 502(d)(2), codified at 29 U.S.C. § 1132(d)(2), the

Eighth Circuit held that "[b]enefits due under the terms of Hall's Plan, the first category

of relief available under [§ 502(a)(1)(B)], can only be obtained against the Plan itself."[6]

---

[6] 29 U.S.C. § 1132(d)(2) provides that "[a]ny money judgment under this
subchapter against an employee benefit plan shall be enforceable only against the plan as
an entity and shall not be enforceable against any other person unless liability against
such person is established in his individual capacity under this subchapter."

Id. at 1196.  In Hall, however, the Eighth Circuit recognized that "there is a split in authority concerning whether a party other than the ERISA plan itself is the only proper party defendant on a claim pursuant to ERISA [§ 1132](a)(1)(B)."  Id. at 1194.  The Eighth and Eleventh circuits are on opposite sides of the split.  Specifically, in Hall, the Eighth Circuit cites an Eleventh Circuit opinion as conflicting authority, not as supporting authority as alluded to by Campbell.  See id. at 1196 (citing Hunt v. Hawthorne Assocs., Inc., 119 F.3d 888 (11th Cir. 1997)); (see Doc. No. 42 at 15; Doc. No. 45 at 7).)  In Hunt, the Eleventh Circuit concluded that, under § 502(a)(1)(B), an "order enjoining the payment of benefits from an ERISA plan must issue against a party capable of providing the relief requested," not the ERISA plan itself.  119 F.3d at 908; see also Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997) (holding that "[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan").  Given that the Eleventh Circuit takes a contrary position to the one espoused in Hall, Hall is not persuasive authority in this circuit.

Here, Plaintiffs proceed on their ERISA claims against Campbell in his capacity as the ESOP trustee, asserting that he acted in that capacity "[a]t all times material to the

Complaint."[7]  (Compl. at 9 (¶ 14), 11 (¶ 19)); (See Doc. No. 44 at 14-15, wherein

Plaintiffs reiterate that they are suing Campbell in his capacity as the "Trustee or Plan

Administrator" of the plan.)  They further aver that Campbell is a fiduciary with respect

to the ERISA-protected plans at issue, pursuant to 29 U.S.C. § 1002(21)(A) and 29

_____

[7] In an affidavit filed with his motion for judgment on the pleadings, Campbell contends that he was not involved in any of the decisions regarding the administration of the ESOP which allegedly caused Plaintiffs' injuries, namely, because he says that he was not appointed the ESOP trustee until after the alleged injurious decisions were made. (See Campbell Aff. (Ex. to Doc. No. 41).)  Specifically, Campbell attests that he did not participate "in any decisions surrounding . . . the acquisition by the ESOP of company stock owned by George E. Hutchinson."  (Id. ¶ 5); (see also Doc. No. 42 at 3 (stating that Campbell did not assume the position of ESOP trustee "until after the alleged wrongful transaction asserted in this lawsuit occurred").)  For present purposes of ruling on the pending motion for judgment on the pleadings, the court has not relied on Campbell's affidavit or considered extraneous evidence.  See Fed. R. Civ. P. 12(c)  ("if, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"); see also Homart Dev. Co. v. Sigman, 868 F.2d 1556, 1561-62 (11th Cir. 1989).  The court finds that issues surrounding the timing of Campbell's appointment in relation to the timing of the adverse decisions about which Plaintiffs complain are better suited for resolution on summary judgment at the appropriate time.

U.S.C. § 1102.[8]  (1st Am. Compl. at 2 (¶ 3).)  Furthermore, Plaintiffs contend that Campbell, as trustee, "is the individual who would most likely be the subject of [] an equitable order" which relates to benefits paid under the CTAP "severance plan."  (Doc. No. 44 at 15.)

Based upon the foregoing allegations, the court finds that Plaintiffs have placed Campbell on notice that he is being sued in his capacity as an ERISA fiduciary for the recovery of the benefits under the ERISA-protected plans at issue.  Furthermore, the court finds that, pursuant to <u>Hall</u>, Campbell, in his capacity as the ESOP trustee, is an appropriate defendant for purposes of a § 502(a)(1)(B) claim.  The court, thus, rejects the sole argument which Campbell has advanced for the dismissal of any § 502(a)(1)(b) claim.

Plaintiffs, however, have not cited § 501(a)(1)(B) in their First Amendment to Complaint or addressed § 502(a)(1)(B) in their brief filed in opposition to Campbell's motion for judgment on the pleadings.  The arguments which Plaintiffs proffer in their

─────────────────────

[8] Section 1002(21)(A) provides:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

brief in support of their ERISA claims are at best, cryptic.  (Doc. No. 44 at 14-16.)

Federal Rule of Civil Procedure 8(f), though, requires that all pleadings are to be

construed to do substantial justice:  "The Federal Rules reject the approach that pleading

is a game of skill in which one misstep by counsel may be decisive to the outcome and

accept the principle that the purpose of a pleading is to facilitate a proper decision on the

merits."  Conley v. Gibson, 355 U.S. 41 (1957).  At this stage of these proceedings, in

order to accomplish substantial justice, the court finds that it is appropriate to construe

Plaintiffs' First Amendment to Complaint as asserting a claim for recovery of benefits

under § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  See Heffner v. Blue Cross and Blue

Shield of Alabama, Inc., 443 F.3d 1330, 1338 (11th Cir. 2006) (construing one of

plaintiffs' claims "as arising under § 502(a)(1)(B) because the nature of the claim and the

remedies sought with it fall within the scope of relief authorized by that ERISA

provision").

In so finding, the court does not render an opinion as to whether Plaintiffs

sufficiently have alleged a § 502(a)(1)(B) theory of recovery against Campbell.[9]  That

issue is not presently before the court because Campbell focused only on the absence of a

---

[9] For whatever it's worth, however, the court notes that any argument by Plaintiffs
that they are entitled to benefits under § 502(a)(1)(B), not because they are owed under
the plans at issue, but because Campbell breached his fiduciary duties appears to be
untenable.  See Chacko v. Sabre, Inc., 473 F.3d 604, 609 (5th Cir. 2006).

24

proper-party defendant.[10]  Accordingly, the court finds that Plaintiffs' claim, construed as arising under § 502(a)(1)(B), may go forward against Campbell in his capacity as a trustee.

### 2. "Appropriate relief" under ERISA § 502(a)(2)

Section 502(a)(2) authorizes a participant or beneficiary to bring a civil action for "appropriate relief" under ERISA § 409(a).  See 29 U.S.C. § 1132(a)(2); 29 U.S.C. 1109(a).  Section 409(a) imposes personal liability on an individual who breaches his or her fiduciary duties and provides as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.  A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109(a).

Campbell contends that, if Plaintiffs are alleging violations under ERISA § 502(a)(2) in asserting breaches of fiduciary duties, such claims fail because they must

---

[10] The court notes that Campbell makes a passing comment that "the amount of benefits payable to a participant upon termination of the Plan is a matter governed by the bankruptcy court's order."  (Doc. No. 45 at 7.)  That issue, though, has not been adequately briefed.  The parties may explore at the appropriate time the effect, if any, of Central Alabama's insolvency and the related bankruptcy proceedings on the viability of a § 502(a)(1)(B) claim against Campbell.

be brought derivatively on behalf of the plan and Plaintiffs are not representing the

interests of the plan.  Plaintiffs have not countered Campbell's argument.  For the reasons

to follow, the court agrees with Campbell.

In Massachusetts Mutual Life Insurance Co. v. Russell, relied upon by Campbell,

the Supreme Court of the United States held that ERISA § 409(a) provides relief only for

a plan and not for an individual participant or beneficiary.  See 473 U.S. 134, 142-44

(1985).  There, a beneficiary of a plan sued the plan administrator for damages arising out

of the administrator's delay in processing her claim for benefits under two ERISA-

protected employee benefits plans.  See id. at 136.  The Supreme Court held that the

fiduciary duties imposed by § 409 "inure[] to the benefit of the plan as a whole," rather

than to the plan's individual beneficiaries.  See 473 U.S. at 140; see also id. at 144.

Examining the statutory text, the Supreme Court observed that, when a fiduciary breaches

his or her duties "'with respect to a plan,'" the text of § 409(a) requires the fiduciary to

"'make good *to such plan* any losses *to the plan* . . . and to restore *to such plan*'" the

losses resulting from the breach.  473 U.S. at 140 (quoting 29 U.S.C. § 1109(a) (emphasis

in Russell)).  "A fair contextual reading of [§ 409(a)] makes it abundantly clear that its

draftsmen were primarily concerned with the possible misuse of plan assets, and with

remedies that would protect the entire plan, rather than with rights of an individual

beneficiary."  Id. at 142.  A beneficiary, therefore, may bring a claim under § 502(a)(2) in

a "representative capacity on behalf of the plan as a whole," requesting, for example, that

a breaching fiduciary return funds to the plan.  Id. at 142 n.9; see also id. at 144 ("[T]he

entire text of [§ 409] persuades us that Congress did not intend that section to authorize any relief except for the plan itself."); see also Varity Corp. v. Howe, 516 U.S. 489, 519 (1996) (observing that "we held in Russell that § 409 authorizes recovery only by 'the plan as an entity,' . . . and does not allow for recovery by individual plan participants") (Thomas, J., dissenting).

Here, the relief sought, as set out in Plaintiffs' "prayer for relief," is for individual relief.  They do not bring their claims on behalf of the plan or request that the losses resulting from Campbell's alleged breaches be returned to the plan.  Hence, the court finds that Russell forecloses Plaintiffs from suing for breaches of fiduciary duties under § 502(a)(2) because Plaintiffs are seeking damages on their own behalf, not on behalf of the Plan.

### 3.  "Appropriate equitable relief" under ERISA § 502(a)(3)(B)

In Heffner v. Blue Cross and Blue Shield of Alabama, Inc., after synthesizing the principles of Russell and Varity, the Eleventh Circuit explained that claims for individualized relief for a fiduciary's breach of duties are cognizable, if at all, under § 502(a)(3), not § 502(a)(2):

> ERISA § 409(a) imposes personal liability on fiduciaries for breaching their fiduciary duties.  29 U.S.C. § 1109(a).  ERISA § 502(a)(2) authorizes a plan participant or beneficiary to seek "appropriate relief" to enforce § 409. Id. § 1132(a)(2).  The Supreme Court has explicitly stated that the relief available under § 409 can only be obtained on behalf of "the plan itself." Russell, 473 U.S. at 144 . . . .  In certain circumstances, however, relief to individual plan members or beneficiaries for a breach of fiduciary duty may

27

> be available under ERISA § 502(a)(3).  Varity Corp. v. Howe, 516 U.S.
> 489, 507-15 . . . (1996).  . . .  In its Varity decision the Supreme Court
> explained that § 502(a)(3) is a kind of "catchall" provision that "act[s] as a
> safety net, offering appropriate equitable relief for injuries caused by
> violations that § 502 does not elsewhere adequately remedy."  516 U.S.
> at 512.

See 443 F.3d 1330 (11th Cir. 2006).  The court, thus, must determine whether Plaintiffs'

claims seeking individualized relief for Campbell's breaches of fiduciary duties may be

brought under ERISA § 502(a)(3).

Relying on Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204

(2002), Campbell argues that, no matter how Plaintiffs phrase their requested relief, they

are, in fact, seeking legal damages for alleged monetary sums owed to them via their

CTAP election.  Thus, Campbell alleges that Plaintiffs have not alleged a claim under

§ 502(a)(3) because § 502(a)(3) only allows for the recovery of equitable relief.  In

response, Plaintiffs contend that, given their allegations that Campbell, as a fiduciary of

the ESOP, provided "deliberately misleading information and commitments regarding

severance to [] Plaintiffs," the court "has an adequate factual basis to support equitable

relief" and that a dismissal at this stage is premature.  (Doc. No. 44 at 14-15.)  For the

reasons to follow, the court agrees with Campbell that the relief requested by Plaintiffs is

not permitted under § 502(a)(3).

While a participant or beneficiary may bring a claim for individualized relief

pursuant to 29 U.S.C. § 1132(a)(3), relief is limited to "appropriate equitable relief."  29

U.S.C. § 1132(a)(3); see Mertens v. Hewitt Assoc., 508 U.S. 248 (1993).  In Great-West

Life & Annuity Insurance Co. v. Knudson ("Knudson"), the Supreme Court expounded upon what types of claims qualify as "equitable relief," within the meaning of § 502(a)(3).  See 534 U.S. 204 (2002).  The Court began by reciting its holding in Mertens, supra, that "the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were typically available in equity.'"  Id. at 210 (quoting Mertens, 508 U.S. at 256).  The Supreme Court cautioned that, even where an ERISA plaintiff frames the relief as steeped in equity, the court must look past the label:  The determination of whether a particular remedy "is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought."  Knudson, 534 U.S. at 213 (citation omitted); Popowski v. Parrot, 461 F.3d 1367 (11th Cir. 2006).

In Knudson, the Court was not persuaded by the petitioners' attempts to categorize as equitable their requests for an injunction, specific performance and restitution.  The Court observed that, while the labels of injunction and specific performance connote relief grounded in equity, neither "an injunction to compel the payment of money past due under a contract, [n]or specific performance of a past due monetary obligation" is an equitable remedy under § 502(a)(3).  Knudson, 534 U.S. at 210-11.  The Knudson court reiterated that "'[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages, as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty."  Id.

29

at 210 (quoting  <u>Bowen v. Massachusetts</u>, 487 U.S. 879, 918-19 (1988) (Scalia, J., dissenting)).

The Court also explained that a § 503(a)(3)(B) claim could seek equitable restitution to "restore to the plaintiff particular funds or property in the defendants's possession" via a constructive trust or equitable lien.  <u>Id.</u> at 213-14.  However, "not all relief falling under the rubric of restitution is available in equity."  <u>Id.</u> at 212.  The Court held that the restitution sought by the petitioners constituted legal relief because the petitioners essentially sought "a judgment imposing merely personal liability upon a defendant to pay a sum of money."  <u>Id.</u>

In light of the foregoing principles, the court turns to an examination of the complaint, as amended, to determine the basis of Plaintiffs' claims and the nature of the relief sought.  The thrust of Plaintiffs' action is that, in electing to participate in CTAP, Plaintiffs "terminated their employment with the expectation of receiving shares of ESOP monies equal to or exceeding the value of their shares as determined at the last year-end valuation[,]" but instead the ESOP monies they ultimately received "were a small fraction of the amounts which had been evaluated" at that time.  (Compl. at 12 (¶ 29), 13 (¶ 30).) Plaintiffs blame the diminished value of the ESOP stock on Campbell's alleged breaches of fiduciary duties, and those breaches encompass allegations of concealment, misrepresentation, conspiracy and failure to act in the best interest of the plans' participants and beneficiaries.  (Doc. No. 21 at 3-4 (Counts 9-12).)  Moreover, focusing on the additional benefits allegedly owed to them, in two counts, Plaintiffs specifically

30

assert that Campbell breached his fiduciary duties by failing "to provide benefits as represented to Plaintiffs" and "to provide a severance plan to Plaintiffs pursuant to Defendants' representations."  (Id. at 21 (Counts 7 and 8).)

With that background regarding the factual nature of Plaintiffs' claims, the court turns to an examination of the type of relief Plaintiffs seek, but finds that Plaintiffs have failed to establish that the relief is equitable.  In their *ad damnum* clause, Plaintiffs expressly pray for "benefits due them under their severance plan," i.e., the CTAP, as the remedy for Campbell's alleged breaches of fiduciary duties outlined in other parts of the complaint.  (1st Am. Compl. at 6 (Doc. No. 21).)  While Plaintiffs seek to secure monetary damages in the form of benefits owed, Plaintiffs have not specified or alluded to an equitable mechanism through which the monetary payment of promised benefits can be accomplished under § 502(a)(3).  Indeed, Plaintiffs have not argued that their request is anything other than the equivalent of money damages, which as concisely observed in Knudson "'are, of course, the classic form of *legal* relief,'" and, consequently, a form of relief prohibited under § 502(a)(3).  534 U.S. at 210 (quoting Mertens, 508 U.S. at 255); cf. Mertens, 508 U.S. at 255 ("Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory damages – monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties.").  Because their bald request for benefits seeks monetary compensation for alleged breaches of fiduciary duties by Campbell, Plaintiffs seek a legal remedy which is not available under § 502(a)(3).

In addition to their request for an outright payment of benefits, Plaintiffs also have clothed their request for benefits as one of equitable estoppel.  In this regard, Plaintiffs allege that Campbell "made material misrepresentations regarding an alleged severance plan" upon which Plaintiffs "reasonably and detrimentally relied" and that Campbell "is equitably estopped pursuant to 29 U.S.C. § 1132(a)(3)(B) to deny that he promised Plaintiffs severance benefits."  (Id. at 5, Count 13, (¶¶ 2, (¶ 3).)  The bare reality, however, is that a request to estop a fiduciary from denying promised benefits seeks the same outcome as a direct request for money owed due to a fiduciary's breach of duties and amounts to a legal remedy not recoverable under § 502(a)(3)(B).  (1st Am. Compl. at 5 (¶ 2) (Doc. No. 21).)  Other circuits have reached the same conclusion.  See Slice v. Sons of Norway, 34 F.3d 630, 633 (8th Cir. 1994) (holding that, although the plaintiff categorized his claim as one of equitable estoppel, the relief the plaintiff sought was "not available under 29 U.S.C. § 1132(a)(3)(B) because he [was] essentially seeking money damages"); Watkins v. Westinghouse Hanford Co., 12 F.3d 1517, 1527-28 & n.5 (9th Cir. 1993) (applying Mertens to hold that 29 U.S.C. § 1132(a)(3) did not afford plaintiff relief for her equitable estoppel claims because the remedy sought was a legal remedy); Katz v. Alltel Corp., 985 F. Supp. 1157, 1162 (N.D. Ga. 1997) (observing that "even assuming that the Plaintiff identified § 502(a)(3) as the statutory authority for her claim, Mertens bars the Plaintiff's equitable estoppel action because she is seeking monetary damages on this claim"), aff'd, 197 F.3d 1084 (11th Cir. 2000); cf. Knudson, 534 U.S. at 211 n.1 (noting that "any claim for legal relief can, with lawyerly inventiveness, be phrased in

32

terms of an injunction").  In sum, the court finds that the fact that Plaintiffs have

presented their § 502(a)(3)(B) claim as an equitable estoppel claim is unavailing, since

the actual relief sought by Plaintiffs is legal in nature.[11]

Tellingly, Plaintiffs have not presented any argument as to how their estoppel

claim falls within a category of relief which was "'*typically* available in equity.'"

Knudson, 534 U.S. at 210 (quoting Mertens, 508 U.S. at 256).  Rather, Plaintiffs merely

point out that they also have requested any "such other and further relief as this Court

deems appropriate" and assert that such a request "contemplates any necessary equitable

relief that the plaintiffs are entitled to or require to correct these abuses."  (Doc. No. 44

at 15 (citing 1st Am. Compl. at 6 (Doc. No. 21)).)  The court, however, is not persuaded

that their "catch-all" request for relief preserves a § 502(a)(3)(B) claim.

---

[11] The court notes that an ERISA plaintiff is not precluded from relying on
principles of equitable estoppel as a theory for recovery of benefits under § 502(a)(1)(B).
See Katz v. Comprehensive Plan of Group Insurance, 197 F.3d 1084, 1090 (11th Cir.
1999).  However, as recited in Katz, which examined equitable estoppel within the
context of § 502(a)(1)(B), there are only limited circumstances in which equitable
estoppel is available under ERISA.  Namely, equitable estoppel is available only where
"(1) the provisions of the plan at issue are ambiguous, and (2) representations are made
which constitute an oral interpretation of the ambiguity."  Id. at 1090; see also Jones v.
Am. General Life and Accident Ins. Co., 370 F.3d 1065, 1069 (11th Cir. 2004) (observing
that the Eleventh Circuit "recognize[s] a very narrow common law doctrine under Section
502(a)(1)(B) for equitable estoppel").  Here, Plaintiffs have not alleged an oral
misrepresentation concerning an ambiguous plan term.  There are no facts in the
complaint from which such a theory can be inferred, and there is no suggestion elsewhere
in brief that Plaintiffs are proceeding under such a theory.  The facts, therefore, are
insufficient to support a claim for equitable estoppel.

Rule 8(a)(3) requires a plaintiff to identify the nature of the relief sought to which the plaintiff believes he or she is entitled.  See Fed. R. Civ. P. 8(a)(3).  Plaintiffs' generic "catch all" prayer for relief sheds no illumination on the type or nature of additional relief sought.  Plaintiffs have failed to plead or otherwise articulate in their brief an alternative form of relief which they claim is available to them under § 502(a)(3)(B), and the court is aware of none.  (See Doc. No. 44 at 15); cf. Kishter v. Principal Life Ins. Co., 186 F. Supp.2d 438, 446 (S.D.N.Y. 2002) ("Plaintiff has also requested 'such other . . . equitable relief as the Court deems appropriate,'" but "neither plaintiff nor the court's own ingenuity suggest a form of alternative equitable relief that would be appropriate" under ERISA § 502(3)(B).).

Notwithstanding the absence of any meaningful analysis by Plaintiffs, the court carefully has considered the guiding principles from Knudson to ascertain whether there exists a form of equitable relief (although not pleaded by Plaintiffs) through which Plaintiffs potentially could secure the alleged benefits owed under § 502(a)(3)(B), but the court found none.  The court recognizes, for example, as discussed above, that Knudson teaches that an ERISA cause of action which seeks monetary damages based upon a breach, but seeks recovery "in the form of a constructive trust or an equitable lien" on an identified fund in the defendant's possession is equitable relief for purposes of § 502(a)(3)(B).  534 U.S. at 213.  Here, though, Plaintiffs allege that the ESOP trust essentially has been depleted due to the rapid diminution in the value of the ESOP stock, and Knudson cautioned that, where "the property [sought to be recovered] or its proceeds

34

have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]."  Id. at 213-14.  In the latter circumstance, the plaintiff is seeking a legal remedy – i.e., the "imposition of personal liability" for money owed to the plaintiff – which does not constitute "other appropriate equitable relief" under § 502(a)(3)(B).  Id. at 214.

As a final maneuver to keep their § 502(a)(3)(B) alive, Plaintiffs argue in cursory fashion that "it is premature to rule that no equitable remedies are appropriate," but Plaintiffs cite no authority in support of their supposition.  (Doc. No. 44 at 15.)  The time for filing a Rule 12(c) motion is ripe, see Brisk v. City of Miami Beach, Florida, 709 F. Supp. 1146, 1147 (S.D. Fla. 1989), and the purpose of a Rule 12(c) motion is to test the legal sufficiency of a plaintiff's pleadings.  See Horsley, 292 F.3d at 700.  Assuming the truth of the averments and further assuming that the allegations demonstrate conclusively a breach of fiduciary duty by Campbell, it is apparent on the face of the pleadings that there is no relief available to Plaintiffs under § 502(a)(3)(B) because the only relief sought is legal in nature.  As pointed out by Campbell (see Doc. No. 45 at 9), other courts have dismissed ERISA § 502(a)(3)(B) claims at the pleading stage for failure to state a claim for relief under § 502(a)(3) on the ground that both specific and general requests for equitable relief merely were attempts to repackage legal claims as equitable ones.  See Helfrich v. PNC Bank, Kentucky, Inc., 267 F.3d 477, 481 (6th Cir. 2001) (applying Fed. R. Civ. P. 12(b)(6) and dismissing plaintiff's § 502(a)(3)(B) claim because the relief

requested constituted legal damages, not equitable restitution); *In re* Cardinal Health, Inc.

ERISA Litigation, 424 F. Supp.2d 1002, 1024-26 (S.D. Ohio 2006).

In sum, the court finds that Plaintiffs' claims alleging breaches of Campbell's

fiduciary duties and seeking equitable estoppel are disguised claims for legal relief for

money allegedly owed to Plaintiffs under the ERISA-protected plans at issue.[12]  Because

the legal remedy which Plaintiffs seek is unavailable under § 502(a)(3)(B), the court finds

that there is no set of facts which would entitle Plaintiffs to relief under § 502(a)(3)(B).

Accordingly, the court finds that Campbell's motion for judgment on the pleadings as to

these claims is due to be granted.


## VII.  ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendant Boyd

Campbell's motion for judgment on the pleadings be and the same is hereby GRANTED

in part as follows:

(1)  Plaintiffs' RICO claim in Count 5 be and the same is hereby DISMISSED

with prejudice on the ground that Plaintiffs lack standing to bring a RICO claim;

---

[12] The court notes that Plaintiffs have cited Ervast v. Flexible Products Co., 346 F.3d 1007 (11th Cir. 2003), as support for a breach of fiduciary claim against Campbell predicated on a failure-to-inform theory.  (See Doc. No. 44 at 15.)  Even assuming, without deciding, that the allegations in the complaint demonstrate as a matter of substantive law that a breach occurred, the claim is not cognizable under § 502(a)(3)(B) of ERISA unless it is a claim for "equitable relief."  As discussed herein, the relief Plaintiffs seek is not equitable, thereby foreclosing Plaintiffs' reliance on § 502(a)(3)(B).

(2)  Plaintiffs' state law claims in Counts 1, 2, 3, 4, 5 and 6 be and the same are hereby DISMISSED with prejudice on the ground of ERISA preemption;

(3) to the extent that Plaintiffs bring their breach of fiduciary duty claims (Counts 7, 8, 9, 10, 11 and 12) under either ERISA § 502(a)(2) or ERISA § 502(a)(3), said claims be and the same are hereby DISMISSED with prejudice because Plaintiffs have not requested relief which is available under these statutory provisions;

(4)  Plaintiffs' ERISA equitable estoppel claim in Count 13 be and the same is hereby DISMISSED with prejudice on the ground that the relief sought is akin to legal relief which is unavailable pursuant to ERISA § 502(a)(3)(B); and

(5) Count 14, which is a separate count requesting attorney's fees and costs, be and the same is hereby DISMISSED with prejudice as redundant and unnecessary.

It is further CONSIDERED and ORDERED that Campbell's motion for judgment on the pleadings be and the same is hereby DENIED to the extent that the court construes the complaint, as amended, as asserting a claim for recovery of benefits under ERISA § 502(a)(1)(B).  The action, thus, proceeds on this sole claim.

DONE this 30th day of March, 2007.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE

37