IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BINITA L. COOK, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 2:01cv1425-ID |
| v. | ) |
| | ) |
| BOYD F. CAMPBELL, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Before the court is Plaintiffs' Motion to Reconsider. (Doc. No. 101.) Plaintiffs ask the court to reconsider and reverse its ruling, entered March 30, 2007 (Doc. No. 59), granting Defendant Boyd F. Campbell's ("Campbell") motion for judgment on the pleadings on Plaintiffs' claims for breach of fiduciary duty, brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), § 502(a)(2).[1]  See 29 U.S.C. § 1132(a)(2).  As grounds for their Motion, Plaintiffs rely on the Supreme Court of the United States' recent holding in LaRue v. DeWolff, Boberg & Associates, Inc., ___ U.S. ___, 128 S. Ct. 1020 (2008).  Campbell filed a Response in opposition to Plaintiffs' Motion.  (Doc. No. 105.)  After careful consideration of the arguments of counsel, the

---

[1] The court's ruling is memorialized in an opinion which is published at Cook v. Campbell, 482 F. Supp.2d 1341 (M.D. Ala. 2007).  Henceforth, the court cites the reported decision as Cook I.

relevant law and the allegations in the complaint, as amended, the court finds that

Plaintiffs' Motion is due to be denied.

## II. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations of each.

## III. STANDARD OF REVIEW

An intervening change in controlling law justifies a court's reconsideration of a prior ruling. See Richards v. United States, 67 F. Supp.2d 1321, 1322 (M.D. Ala. 1999). The prior ruling at issue addressed Campbell's motion for judgment on the pleadings, made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Judgment on the pleadings is appropriate when "no issues of material fact exist, and the movant is entitled to judgment as a matter of law." Ortega v. Christian, 85 F.3d 1521, 1524 (11th Cir. 1996). When reviewing a judgment on the pleadings, the court must accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. Id. A judgment on the pleadings is limited to consideration of "the substance of the pleadings and any judicially noticed facts." Bankers Ins. Co. v. Florida Residential Prop. & Cas. Joint Underwriting Ass'n, 137 F.3d 1293, 1295 (11th Cir. 1998). "If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts

that could be proved consistent with the allegations, the court should dismiss the complaint." Horsley v. Rivera, 292 F.3d 695, 700 (11th Cir. 2002).

### IV. FACTS

The facts are set out in Cook I, see *supra* footnote one. They need not be repeated here.

### V. DISCUSSION

In Cook I, the court agreed with Campbell that Massachusetts Mutual Life Insurance Co. v. Russell ("Russell"), 473 U.S. 134 (1985), precluded the relief sought by Plaintiffs under ERISA § 502(a)(2) for breach of fiduciary duty. In Russell, the Court held, "A fair contextual reading of the statute [§ 502(a)(2)] makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the *entire plan*, rather than with the rights of an individual beneficiary." Id. at 142 (emphasis added). Applying Russell, this court concluded,

> Here, the relief sought, as set out in Plaintiffs' "prayer for relief," is for individual relief. [Plaintiffs] do not bring their claims on behalf of the plan or request that the losses resulting from Campbell's alleged breaches be returned to the plan. Hence, the court finds that Russell forecloses Plaintiffs from suing for breaches of fiduciary duties under § 502(a)(2) because Plaintiffs are seeking damages on their own behalf, not on behalf of the Plan.

Cook I, 482 F. Supp.2d at 1357.

3

After this court's decision in Cook I, the Supreme Court of the United States decided LaRue. The plaintiff in LaRue was a participant in a 401(k) plan sponsored by his former employer. 128 S.Ct. at 1022. The 401(k) plan was a "defined contribution plan" (also called an "individual account plan"). The plaintiff alleged that he instructed his employer to make changes to the investments in his individual 401(k) account, but that his employer did not implement these changes. The plaintiff further alleged that his employer's failure to follow his instruction caused his individual account to lose $150,000 in "profits" and amounted to a breach of fiduciary duty. Id. at 1022-23. On appeal to the Fourth Circuit, the plaintiff argued that he should be made whole through ERISA § 502(a)(2), which authorizes claims for losses "to the plan." Relying on Russell, the Fourth Circuit held that, because the plaintiff's losses could not be ascribed to the collective 401(k) plan, the losses were not recoverable under § 502(a)(2). Id. at 1021.

As submitted to the Supreme Court, the issue was whether, pursuant to § 502(a)(2), a participant in a defined contribution plan may sue to recover losses to the plan caused by a breach of fiduciary duty, even when those losses affect only the participant's individual account and not other accounts. In LaRue, the Court narrowed the scope of Russell's longstanding holding that any recovery must benefit the "entire plan," reasoning that Russell applies only to a "defined benefit plan," the type of plan at issue in Russell. The LaRue Court explained that "[m]isconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit

4

unless it creates or enhances the risk of default by the entire plan." Id. at 1025.

Distinguishing defined contribution plans, the Supreme Court explained:

> For defined contribution plans . . . fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive. Whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409. Consequently, our references to the "entire plan" in Russell, which accurately reflect the operation of § 409 in the defined benefit context, are beside the point in the defined contribution context.

Id. The LaRue Court held, "that although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." Id. at 1026.

Campbell argues that "LaRue is not on point," and, therefore, "there is no reason for the court to reconsider its prior ruling." (Doc. No. 105 at 6.) According to Campbell, Plaintiffs "are not alleging a fiduciary breach that affected only their individual accounts." (Id. at 4.) To the contrary, Campbell says that "the only facts alleged by Plaintiffs in support of their ERISA fiduciary breach claims are that [he] failed to adequately investigate the sale of George Hutchinson's stock to the ESOP [employee

5

stock ownership plan)."[2] (Id.) Campbell contends that "[t]his alleged breach, if true, impacts the Plan as a whole and all Plan participants." (Id.)

The issue, as framed by the parties, is whether the holding in LaRue revives Plaintiffs' breach of fiduciary duty claims in the First Amendment to the Complaint so as to warrant a reversal of the court's prior ruling granting judgment on the pleadings in favor of Campbell on Counts Seven through Twelve. For the reasons to follow, the court finds that LaRue cannot save Plaintiffs' breach of fiduciary duty claims.

No argument has been advanced that the ESOP at issue, which bought and held stock of Central Alabama for the employees' benefit, is not a defined contribution plan. There is, however, a notable factual distinction between the 401(k) defined contribution plan at issue in LaRue and the ESOP in this case, a distinction which Campbell highlights in his brief. The 401(k) plan at issue in LaRue "permit[ted] participants to direct the investment of their contributions in accordance with specified procedures and requirements," and the fiduciary breach alleged in LaRue occurred as a result of the

---

[2] The court notes that Counts Seven through Twelve of the First Amendment to Complaint, for the most part, contain undefined allegations of breaches of fiduciary duties. Count Nine, for example, alleges that Campbell "fail[ed] to perform his duties in accordance with the documents and instruments governing Plaintiffs' employee welfare benefits plans," namely, the ESOP and the career transition assistance plan ("CTAP"). (1st Am. Compl. at 3, Count 9 (¶ 2).) As pointed out by Campbell, only one count is defined. Count Ten alleges that Campbell "fail[ed] to conduct a good faith independent investigation of the buyout transactions involving the stock of George E. Hutchinson to determine whether the transactions were fair to the ESOP" and "permitt[ed] the ESOP to purchase the Hutchinson shares for more than adequate consideration." (Id. at 3, Count Ten (¶¶ 2-3).)

6

employer's failure to comply with the plaintiff's instruction to switch investments in the plaintiff's individual account. LaRue, 128 S.Ct. at 1022. The injury to the LaRue plaintiff's account was unique to that one account and did not affect the accounts of any other participants.

Here, to the contrary, as alleged in Plaintiffs' amended complaint, the ESOP was funded by Central Alabama with shares of company stock, which were deposited in each participating employee's individual account in a set amount proportionate to the employee's salary. (Compl. at 4); Cook I, 482 F. Supp.2d at 1347. There is no allegation that Plaintiffs could make individual choices as to how the ESOP was funded or that Plaintiffs' losses occurred based on Campbell's failure to adhere to Plaintiffs' individual directives as to how their accounts (*i.e.*, their proportional share of company stock) were to be maintained. The issue in this case is not, as it was in LaRue, whether § 502(a)(2) "may be used by the beneficiary of a defined-contribution account that suffers a loss, *even though other participants are uninjured by the acts said to constitute a breach of fiduciary duties*." Rogers v. Baxter Int'l, Inc., ___ F.3d ___, ___ 2008 WL 867741, *2 (7th Cir. 2008) (discussing LaRue) (emphasis added).

Rather, here, Plaintiffs' accusations are that Campbell breached his fiduciary duties in a way that negatively impacted the value of the company stock, see, *supra*, footnote 2, which, in turn, impacted not only Plaintiffs' accounts, but the account of every ESOP participant. The allegations, thus, establish that the fiduciary breaches of which Plaintiffs complain were, as discussed in Russell, part of a systemic breach of

7

fiduciary obligations affecting the ESOP as a whole.  This distinction is important because, according to the *theory* of liability in the amended complaint – which is the document in issue on a motion for judgment on the pleadings – Russell was not an impediment to the ERISA § 502(a)(2) theory alleged by Plaintiffs.  Similar claims were allowed to proceed even during the Russell era.  See e.g., Smith v. Sydnor, 184 F.3d 356, 362-63 (4th Cir. 1999) (§ 502(a)(2) claim viable where employer stock which funded 401(k) plans was allegedly sold at undervalued price as a result of fiduciary breaches); In re Syncor Erisa Litig., 351 F. Supp.2d 970, 990 (C.D. Cal. 2004) (complaint stated a § 502(a)(2) claim because the entire plan, not just the participant's individual § 401(k) account, was impacted because all accounts contained employer stock); see also Steven J. Sacher, *et al.*, Employee Benefits Law, Chp. 12 II.C.1, at 759-62 (2007 Suppl.) (collecting pre-LaRue cases in which courts applied Russell and permitted fiduciary breach claims relating to 401(k) plans).

     Plaintiffs misunderstand why the court granted Campbell's motion for judgment on the pleadings.  Stripping the amended complaint down to its essence, the sole relief sought by Plaintiffs on their claims for breach of fiduciary duty is "benefits due *them* under their [CTAP] severance plan[.]"  (1st Am. Compl. at 6 (emphasis added)); see generally Fed. R. Civ. P. 8(a) (requiring a complaint to contain "a demand for the relief sought").  This remedy is expressly permitted under ERISA § 502(a)(1)(B).  See 29 U.S.C. § 1132(a)(1)(B) (providing that a participant may bring a civil action "to recover benefits due to him under the terms of his plan").  Plaintiffs, however, have not cited a

8

decision from any court which has recognized this remedy as "appropriate relief" under ERISA § 502(a)(2).³  Compare Smith, 184 F.3d at 363 (concluding that disgorgement of profits and rescission are "appropriate relief" under § 502(a)(2)); In re JDS Uniphase Corp. Erisa Litigation, No. C 03-04743 CW (WWS), 2005 WL 1662131, *12 (N.D. Cal. July 14, 2005) (finding that plaintiffs' sought appropriate relief under § 502(a)(2) where complaint requested that defendants "restore the losses to the Plan caused by their breaches of fiduciary duties" and "to make good to the Plans all losses to the Plans resulting from the Defendants' breaches of their fiduciary duties"); see Steven J. Sacher, et al., Employee Benefits Law, Chp. 12 II.C.5, at 896-97 (2nd ed. 2000).  Problematically, as plainly pleaded by Plaintiffs, they seek relief for plan benefits payable directly to themselves.  Cf. LaRue, 128 S.Ct. at 1023 (plaintiff requested "'recovery to be paid into his plan account'").  Plaintiffs' remedy does not seek to hold Campbell "personally liable to make good to [the] plan any losses to the plan resulting from each breach . . . and to restore to such plan" the losses resulting from the breach.  29 U.S.C. § 1109(a).  LaRue did not alter the law in Russell (or the plain wording of § 1109(a)) that any recovery under ERISA § 502(a)(2) against the breaching fiduciary must be paid to the plan, and not to individual participants.  See LaRue, 128 S.Ct. at 1029 (Thomas, J., concurring in judgment) ("Of course, a participant suing to recover benefits on behalf of the plan is not

---

³ Section 502(a)(2) allows a plan participant to seek "appropriate relief" under ERISA § 409(a), which, in turn, provides that, on an action for breach of fiduciary duty, a fiduciary may be held liable to "make good to [the] plan any losses to the plan resulting from each such breach."  29 U.S.C. § 1109(a).

entitled to monetary relief payable directly to him; rather, any recovery must be paid to the plan."). The remedy requested by Plaintiffs was foreclosed by Russell, and the court finds that the remedy requested continues to be foreclosed under the holding in LaRue.[4]

The court is sympathetic to the plight of Plaintiffs, but at the same time the court cannot ignore the governing pleading rules and the failure of Plaintiffs to seek and plead a remedy permitted by § 502(a)(2). Cf. Cook I, 482 F. Supp.2d at 1359-61 (precluding Plaintiffs' § 502(a)(3) claim because the requested relief was legally insufficient). Plaintiffs may think that the court's ruling today, again foreclosing their § 502(a)(2) claims on the pleadings is too stringent, but the court does not believe that to be the case. During this litigation, the court has accorded substantial leeway to Plaintiffs' pleadings, perhaps more leeway than the Federal Rules of Civil Procedure permit, as Campbell suggests. See, e.g., Cook I, 482 F. Supp.2d at 1361 (considering "whether there exists a form of equitable relief (although not pleaded by Plaintiffs) through which Plaintiffs potentially could secure the alleged benefits owed under § 502(a)(3)(B)"); see also id. at 1355. Indeed, in an ERISA action where the plaintiffs pleaded only a claim for

---

[4] While the Plans at issue in this case were not defunct at the time Plaintiffs brought their litigation; they may be now given Central Alabama's Chapter 11 bankruptcy proceedings. When an ERISA plan has been terminated and, thus, cannot receive the relief, some courts have found that the creation of a constructive trust in favor of former plan participants is appropriate equitable relief under § 502(a)(3) for breaches of fiduciary duties). See Steven J. Sacher, et al., Employee Benefits Law, Chp. 12 II.C.I, at 893 n.85 (2nd ed. 2000) (collecting cases). Plaintiffs originally pursued a § 502(a)(3) claim, but sought strictly legal relief, which is not recoverable under § 502(a)(3). The court's findings in this regard are discussed in detail in Cook I. See Cook I, 482 F. Supp.2d at 1357-63.

recovery of benefits under the plan, the Eleventh Circuit admonished the district court for awarding the plaintiffs a remedy not requested: "We also agree with [the employer's] argument that the district court should not have fashioned an equitable remedy in this case when the [plaintiffs] neither sought equitable relief in their complaint nor raised the issue at any point during the underlying litigation." Ogden v. Blue Bell Creameries U.S.A., Inc., 348 F.3d 1284, 1288 n.3 (11th Cir. 2003). The Eleventh Circuit's admonition would appear to apply with equal force in this case.[5]

There is another reason why Plaintiffs' § 502(a)(2) claims likely fail. As observed by Chief Justice Roberts, "some Courts of Appeals have . . . prevented plaintiffs from recasting what are in essence plan-derived benefit claims that should be brought under § 502(a)(1)(B) as claims for fiduciary breaches under § 502(a)(2)." LaRue, 128 S.Ct. at 1027 (Roberts, Chief J., concurring in part and concurring in judgment) (citing Coyne & Delany Co. v. Blue Cross & Blue Shield, 102 F.3d 712 (4th Cir. 1996)). The Fourth Circuit's words ring true in this case. Plaintiffs' § 502(a)(2) claims are just as described by Coyne; they are disguised § 502(a)(1)(B) claims for benefits. Chief Justice Roberts expressed his concern that "[a]llowing a § 502(a)(1)(B) action to be recast as one under

---

[5] Notably, at no time have Plaintiffs sought to amend their ERISA complaint to seek any additional or alternative form of relief – not after Campbell moved for judgment on the pleadings, not after this court's prior rulings, and not after LaRue. (See 1st Am. Compl. at 6.) The court points out that the only reason Plaintiffs filed their First Amendment to Complaint is because the court directed them to replead their preempted state-law claims under ERISA. Even then Plaintiffs did so begrudgingly, defying the court's ruling by merely "adding" to, rather than replacing, their state-law claims and by stating that, notwithstanding the court's dismissal, they were not "waiv[ing] any of their original causes of action under state law." (1st Am. Compl. at 1.)

11

§ 502(a)(2) might permit plaintiffs to circumvent safeguards for plan administrators that have developed under § 502(a)(1)(B)," including "the requirement, recognized by almost all the Courts of Appeals that a participant exhaust administrative remedies mandated by ERISA, § 503, 29 U.S.C. § 1133, before filing suit under § 502(a)(1)(B)." Id. (internal citation omitted); see Springer v. Wal-Mart Associates' Group Health Plan, 908 F.2d 897, 900 (11th Cir. 1990) ("[I]t is no longer open to serious dispute that plaintiffs in ordinary breach-of-contract ERISA actions must normally exhaust available administrative remedies."). That concern manifests itself in this case, as Campbell has argued (*albeit* in a reply brief), that Plaintiffs have not exhausted their administrative remedies under the CTAP, and there is evidence which supports the argument.[6] (See Doc. No. 99 at 6.)

Moreover, as also observed by Chief Justice Roberts, in Varity Corp. v. Howe, 516 U.S. 489 (1996), which involved a § 502(a)(3) claim, the Court "held that relief is

---

[6] The court recognizes that Plaintiffs dispute that "the CTAP document that was provided to them contained a mandatory administrative remedies provision," but Plaintiffs have not challenged as inaccurate the CTAP plan which Campbell has submitted to the court. (See Doc. No. 96 at 2 n.19, in which Plaintiffs note that they "have not duplicated certain documents that were included in Defendant's Evidentiary Submission," including "Defendant's Exhibit 1, The Career Transition Assistance Plan ("CTAP") Document"); (see Rene Schraeder Decl. (Def. Ex. 16 to Doc. No. 84), stating that "[a]n accurate and authentic copy of the CTAP plan document is attached as Exhibit 1"). Plaintiffs also have not disputed that those Plaintiffs who made the CTAP election, did not invoke the claims procedures set out in the CTAP. Plaintiffs appear to take issue with Campbell's argument that claims exhaustion is mandatory, but Plaintiffs have not submitted any evidence or argued that they interpreted the CTAP Claim and Appeal Procedure as optional or that an "erroneous reading of the Plan . . . led [them] to fail in [their] duty to present [their] claims for administrative review." Spivey v. Southern Co., 427 F. Supp.2d 1144, 1157 (N.D. Ga. 2006). Based on the court's ruling herein, the court need not, and declines to, decide the question of exhaustion. The court, by its discussion, merely is pointing out that in this case the issue of exhaustion is not settled.

not 'appropriate' under § 502(a)(3) if another provision, such as § 502(a)(1)(B), offers an adequate remedy." LaRue, 128 S.Ct. at 1026; see also Ogden, 348 F.3d at 1287 (holding that "an ERISA plaintiff who has an adequate remedy under Section 502(a)(1)(B) cannot alternatively plead and proceed under Section 502(a)(3)," which similar to Section 502(a)(2) provides for "appropriate" relief). Chief Justice Roberts intimated, but did not decide, that "[a]pplying the same rationale to an interpretation of 'appropriate' in § 502(a)(2) would accord with [the Court's] usual preference for construing the "same terms [to] have the same meaning in different sections of the same statute.'" 128 S.Ct. at 1026-27. Plaintiffs have discussed LaRue at length, but they have not presented any meaningful argument as to why the court should not adhere to Chief Justice Roberts' sound logic, and, as an alternative finding, the court does so. Should Plaintiffs complain that they do not have an "adequate remedy" under § 502(a)(1)(B) given the court's ruling today in a separate opinion that *res judicata* is a bar to their § 502(a)(1)(B) claim, the Eleventh Circuit's holding in Ogden forecloses that argument. See 348 F.3d at 1284 ("We hold that an ERISA plaintiff has no cause of action under Section 502(a)(3) where Congress provided for an adequate remedy elsewhere in the ERISA statutory framework, even if *res judicata* now bars the adequate remedy provided").

## VI.  ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Plaintiffs' Motion to Reconsider (Doc. No. 101) be and the same is hereby DENIED.

Done this 12th day of May, 2008.

    /s/ Ira Dement
SENIOR UNITED STATES DISTRICT JUDGE