IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BINITA L. COOK, et al.,           ) | |
|                                    ) | |
|     Plaintiffs,                  ) | |
|                                    ) | Civil Action No. 2:01cv1425-ID |
| v.                                    ) | (WO) |
|                                    ) | |
| BOYD F. CAMPBELL,          ) | |
|                                    ) | |
|     Defendant.                 ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

The cause is before the court, *sua sponte*, for consideration of whether the provisions in a Chapter 11 Confirmation Order governing the distribution of funds in an employee stock ownership plan ("ESOP") in which Plaintiffs participated during their employment with Central Alabama Home Health Services, Inc., ("Central Alabama") is *res judicata* with respect to Plaintiffs' claim in this lawsuit for ESOP benefits, made pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), § 502(a)(1)(B). See 29 U.S.C. § 1132(a)(1)(B). For the reasons set out herein, the court concludes that *res judicata* poses a bar to Plaintiffs' § 502(a)(1)(B) claim.

**II. JURISDICTION AND VENUE**

The court exercises subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations of each.

### III. BACKGROUND

The facts giving rise to this case are more fully set out in the court's prior Memorandum Opinion and Order, and the court will not recount all of those facts here.[1] For present purposes, it suffices to outline only the basics of the controversy.

Plaintiffs in this litigation are former employees of Central Alabama. During their employment, Plaintiffs participated in Central Alabama's ESOP, an ERISA-governed plan. All but one Plaintiff also was a participant in Central Alabama's career transition assistance plan ("CTAP"), an ERISA plan which Central Alabama implemented as an alternative to laying off employees. These Plaintiffs voluntarily terminated their employment to participate in CTAP and, in turn, received specified benefits including "ESOP and pension benefits based on their eligibility as of 7/1/97 pursuant to the plan descriptions for each of these benefits." (CTAP at 2 (Def. Ex. 1 at 2).)

This case made its way to federal court on December 5, 2001, by removal from state court. One claim and one defendant remain. The defendant is Boyd F. Campbell ("Campbell"), who is sued in his capacity as the ESOP Trustee. See Cook I, 482 F. Supp.2d at 1354. The claim is a claim for plan benefits made pursuant to ERISA § 502(a)(1)(B). The gist of Plaintiffs' § 502(a)(1)(B) claim, at least as to all but one Plaintiff, is that, in electing to participate in CTAP, Plaintiffs "terminated their

---

[1] The Court's Memorandum Opinion and Order was entered in this case on March 30, 2007 (Doc. No. 59), and is published at Cook v. Campbell ("Cook I"), 482 F. Supp.2d 1341 (M.D. Ala. 2007).

2

employment with the expectation of receiving shares of ESOP monies equal to or exceeding the value of their shares as determined at the last year-end valuation[,]" but instead the ESOP monies they ultimately received "were a small fraction of the amounts which had been evaluated" at that time. (Compl. at 12 (¶ 29), 13 (¶ 30).) Hence, the trifling sum of money which Plaintiffs received from the ESOP is at the core of the § 502(a)(1)(B) controversy.[2]

The longevity of this action is attributable to Central Alabama's Chapter 11 bankruptcy proceeding which resulted in a stay of this litigation.[3] (See Doc. Nos. 20, 21.) The bankruptcy proceeding is relevant because, as discussed below, that proceeding bars Plaintiffs' present § 502(a)(1)(B) claim under the *res judicata* doctrine. It is appropriate, therefore, to provide a sketch of the Chapter 11 bankruptcy proceeding.

On August 23, 2002, Central Alabama filed a voluntary Chapter 11 petition for relief, pursuant to Title 11 of the United States Code, in the United States Bankruptcy Court for the Middle District of Alabama. See *In re* Central Alabama Home Health

---

[2] Plaintiff James R. Dexter ("Dexter") was not eligible for and did not participate in the CTAP. (See Rene Schraeder Decl. ¶ 6 (Def. Ex. 16 to Doc. No. 84).) The court's ruling herein, however, applies the same to Dexter's § 502(a)(1)(B) claim. While Dexter did not make a CTAP election, he elected to take a distribution of his ESOP benefits at a later date (*i.e.*, on August 13, 2002) (see Def. Ex. 7 at 3 (attached to Doc. No. 84)), and, in this lawsuit, Dexter complains about the negligible "price" he received for his ESOP shares. (See, e.g., Pls. Br. at 8 (Do. No. 96).)

[3] Central Alabama is no longer a defendant in this action because, as Plaintiffs previously conceded, all of Plaintiffs' claims against Central Alabama were discharged pursuant to the Confirmation Order entered in the Chapter 11 bankruptcy proceeding. (See July 2006 Order (Doc. No. 51).)

3

Services, Inc., No. 02-32586-DHW (Bankr. M.D. Ala. 2002). Central Alabama's First Amended Plan of Liquidation ("First Amended Plan") provided that the "Class 4 Claim Holder (507(a)[(4)] Priority Claim of ESOP Trustee on behalf of ESOP Trust claimants) shall be paid by distribution of all funds remaining in the ESOP on the later of the Confirmation Date or the final termination of the ESOP under applicable law in payment of their Allowed Unsecured Claims, if any." (1st Am. Plan at 7 (Def. Ex. 2 to Doc. No. 35).) The First Amended Plan continues, "[T]he Debtor will pay the sum of approximately $10,000.00 to the ESOP Trustee as the holder of the Class 4 Claim as full satisfaction of all amounts due hereunder for the purpose of purchasing the stock held by the ESOP Trustee under applicable law related to termination of the ESOP." (Id.) On August 12, 2003, the bankruptcy court entered an Order confirming the First Amended Plan ("Confirmation Order"). (Confirmation Order (Def. Ex. 3 to Doc. No. 35).)

## IV.  THE COURT'S AUTHORITY TO RAISE *SUA SPONTE* THE ISSUE OF *RES JUDICATA*

The court reaches the *res judicata* issue through *sua sponte* reconsideration of its earlier summary judgment rulings (Doc. Nos. 51 & 59) as relates to Plaintiffs' § 502(a)(1)(B) claim, see Lavespere v. Niagara Machine & Tool Works, 910 F.2d 167, 185 (5th Cir. 1990), and also because, on this record, it is permitted to raise the issue *sua sponte*. See American Furniture Co. v. International Accommodations Supply, 721 F.2d

478, 482 (5th Cir. March 11, 1981).[4]  The rule in Lavespere permits the court "to reconsider and reverse" an interlocutory order "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."  910 F.2d at 185.  The rule in American Furniture Company, as succinctly stated in Nagle v. Lee, "allows a court to raise the *res judicata* defense on its own when all the relevant data and legal records are before the court and the demands of comity, continuity in the law, and essential justice mandate judicial invocation of the principles of *res judicata*."  807 F.2d 435, 438 n.2 (5th Cir. 1987).

 Here, in two prior summary judgment motions (see Doc. No. 36 at 6; Doc. No. 45 at 7), Campbell argued that the benefits payable to Plaintiffs under the ESOP are governed by the bankruptcy court's Confirmation Order.  Campbell, however, raised the issue without legal development, and Plaintiffs neglected the issue in their responsive briefs.  Consequently, the court twice indicated that it would consider the issue at a later

---

[4] In Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.  See 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

time upon a more developed argument.[5]  See Cook I, 482 F. Supp.2d at 1356 n.10; (July 2006 Order at 2 (Doc. No. 51).)  Based upon the considerations set out in American Furniture Company and to avoid unnecessary judicial waste, the court finds that it is appropriate at this time for the court to step in and address the issue of whether Plaintiffs can recover monetary benefits from the ESOP different and apart from the procedures set out in the Confirmation Order.  Accordingly, the court independently has researched the issue and has examined the record which contains copies of Central Alabama's First Amended Plan, the bankruptcy court's Confirmation Order, and the docket sheet generated in the bankruptcy proceeding.  Having done so, the court concludes that the Confirmation Order is *res judicata* as to Plaintiffs' § 502(a)(1)(B) claim.  Furthermore, the court finds that Plaintiffs cannot claim surprise or prejudice by the court's reliance on

---

[5] For instance, in a prior summary judgment motion, Campbell argued that Plaintiffs "all seek a larger distribution from the ESOP" than they received under their CTAP election, but that "Plaintiffs' rights with respect to their ESOP distributions have been determined by the Bankruptcy Court, and they may not seek to obtain a larger ESOP distribution by suing the Trustee" of the ESOP. (Campbell Mot. at 6 (Doc. No. 35).) The court denied Campbell's motion for summary judgment "without prejudice," finding that "there ha[d] been inadequate time for discovery," the case having been stayed during the pendency of the bankruptcy proceeding. (July 2006 Order at 2 (Doc. No. 51)); (see also Aug. 2005 Order lifting bankruptcy stay (Doc. No. 27).) To elaborate, the motion was premature because at that time the issue of Campbell's individual liability for breaches of fiduciary duties was not resolved. Because individual liability was a possibility and given the absence of discovery, summary judgment was inappropriate. That possibility, however, has now been extinguished. In Cook I, the court granted Campbell's motion for judgment on the pleadings as to Plaintiffs' breach of fiduciary duty claims against Campbell, and, in a separate Memorandum Opinion and Order entered today in this case, the court has explained why LaRue v. DeWolff, Boberg & Associates, ___ U.S. ___, 128 S. Ct. 1020 (2008), does not revive those claims.

*res judicata*. In particular, Campbell's motions and briefs explicitly address the existence of Central Alabama's Chapter 11 bankruptcy proceeding and raise the proceeding's relevance to the instant action. See Am. Furniture Co., 721 F.2d at 482.

## V. STANDARD OF REVIEW

A court considering a motion for summary judgment must construe the evidence and make factual inferences in the light most favorable to the nonmoving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citations omitted). Summary judgment is entered only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## VI. DISCUSSION

Recognizing the preclusive effect of a bankruptcy court's confirmation of a Chapter 11 bankruptcy plan on a creditor's subsequent fraud lawsuit against another creditor, the old Fifth Circuit in Miller v. Meinhard-Commercial Corp., held that "[a]n arrangement confirmed by a bankruptcy court has the effect of a judgment rendered by a district court, and any attempt by the parties or those in privity with them to relitigate any

7

of the matters that were raised or could have been raised therein is barred under the doctrine *res judicata*." 462 F.2d 358, 360 (5th Cir. 1972) (internal citations omitted). The court continued,

> The suit is no more than a collateral attack upon the referee's order confirming the plan of arrangement; the integrity of the judgment is challenged. . . . [I]t is a collateral attack if it must in some fashion overrule a previous judgment. Through his fraud action, [the creditor] is indirectly asserting that the Chapter XI proceeding should never have been approved . . . . The suit obviously turns upon what could or should have happened in the bankruptcy proceedings. It is specious to argue that [the creditor's] action in fraud is unrelated or only coincidentally related to the merits of the bankruptcy proceedings.

Id. (internal citation omitted). Four prerequisites must be satisfied before *res judicata* (*i.e.*, claim preclusion applies): (1) "the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process"; (2) "the judgment must be final and on the merits"; (3) "there must be identity of both parties or their privies"; and (4) "the later proceeding must involve the same cause of action as involved in the earlier proceeding." Wallis v. Justice Oaks II, Ltd. *(In re Justice Oaks, II Ltd.)*, 898 F.2d 1544, 1550 (11th Cir. 1990). For the reasons to follow, the court finds that the four requirements are satisfied.

First, it is well settled that a bankruptcy court's confirmation order constitutes a final judgment on the merits. See id.; 11 U.S.C. § 1141(a) (providing that "the provisions of a confirmed plan bind the debtor . . . and any creditor . . . whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor

8

. . . has accepted the plan"). Second, the court finds that the Confirmation Order was entered by a court of competent jurisdiction and in conformity with due process. See *In re* Justice Oaks II, 898 F.2d at 1550. More specifically, the bankruptcy court possessed jurisdiction to confirm the plan, and the record reveals that the bankruptcy court gave proper notice of the hearing on confirmation and properly conducted that hearing. See id.; (see also Confirmation Order at 1-2.) Elements one and two, thus, are satisfied.

Turning to the third element, the issue is whether there is an identity of parties. In the bankruptcy proceeding, Campbell (as the ESOP trustee) held an impaired claim "on behalf of" all individuals who had a "claim" against the ESOP. (1st Amended Plan at 7.) It is undisputed that Plaintiffs were individuals with a "claim" against the ESOP. (Id.); see *In re* Justice Oaks II, 898 F.2d at 1551. Accordingly, Plaintiffs had a "claim" within the meaning of the bankruptcy code, which, in turn, made Plaintiffs "creditors" (and the bankruptcy court treated them as such), and, thus, Plaintiffs were "parties in interest" to the confirmation proceedings. *In re* Justice Oaks II, LTD., 898 F.2d at 1550-51 & n.5; (1st Am. Plan at 6, 7); (Confirmation Order at 1B.) Under the reasoning of *In re* Justic Oaks II, LTD, Plaintiffs are considered parties to the confirmation proceedings, and the court finds, upon a review of the record, that Plaintiffs, as the parties against whom the prior Confirmation Order is asserted, had "a full and fair opportunity" to participate in the

Chapter 11 bankruptcy proceeding.[6]  898 F.2d at 1550-51.  Moreover, the participation by Campbell in the Chapter 11 bankruptcy proceeding was in his capacity as the ESOP trustee, the same as in this lawsuit; thus, the court notes that there is a "complete identity of parties."  Id. at 1551.  In sum, the court finds that the Chapter 11 bankruptcy proceeding and this litigation involve the same parties.  The third element is satisfied.

Fourth and finally, for purposes of determining whether the causes of action in two proceedings are the same, the crucial inquiry is whether the two legal actions involve the "same nucleus of operative fact, or [are] based upon the same factual predicate."  Kaiser Aerospace & Elec. Corp. v. Teledyne Indus. (In re Piper Aircraft Corp.), 244 F.3d 1289, 1297 (11th Cir. 2001).  The court, thus, turns to a comparison between the factual issues in this lawsuit with those explored in the first action (i.e., the bankruptcy proceeding).

In this litigation, as stated, Plaintiffs bring a § 502(a)(1)(B) claim seeking benefits allegedly owed to them under the ESOP in which they participated during their employment with Central Alabama.  Under § 502(a)(1)(B), Plaintiffs' recovery is limited to the amount of benefits due under the terms of the ESOP.  See Godfrey v. BellSouth Telecoms., 89 F.3d 755, 761 (11th Cir. 1996) (holding that extracontractual compensatory

---

[6] The court notes also that, during the pendency of the Chapter 11 bankruptcy proceeding, Plaintiffs brought an adversary proceeding in which they unsuccessfully sought a "declaratory judgment of the amount of their claim arising out of matters relating to the ESOP and further request[ed] that said claim be determined to be non-dischargeable." (1st Am. Plan at 3); see generally Term Loan Holder Comm. v. Ozer Group, L.L.C. (In re Caldor Corp., 303 F.3d 161 (2d Cir. 2002) (discussing adversary proceedings).

or punitive damages are unavailable as remedies under § 502(a)(1)(B)).  Any judgment for the recovery of benefits, in turn, is rendered from the ERISA plan itself, not from another source.  See 29 U.S.C. § 1132(d)(1).  Examining the prior Chapter 11 bankruptcy proceeding, the court finds that the amount of benefits to which each Plaintiff is entitled to receive from the ESOP in which he or she participated while employed by Central Alabama was squarely raised during the Chapter 11 bankruptcy proceeding and resolved by the bankruptcy court.  In that proceeding, the bankruptcy court entered a Confirmation Order which expressly governs the amount of benefits recoverable by Central Alabama's ESOP participants.  Namely, under the relevant terms of the First Amended Plan, which were confirmed by the bankruptcy court, Plaintiffs' claims for benefits under the ESOP were given priority under 11 U.S.C. § 507(a)(4) as allowed unsecured claims for contributions to an employee benefit plan.  (See 1st Am. Plan at 7.)  Because the § 502(a)(1)(B) claim raised by Plaintiffs in this lawsuit "arise[s] out of the same nucleus of operative facts" as presented in the Chapter 11 bankruptcy proceeding, the court finds that the fourth element of the *res judicata* test is satisfied.  In re Piper Aircraft Corp., 244 F.3d at 1297.

## VII.  CONCLUSION

In sum, the court finds that there has been a final judgment on the merits by the bankruptcy court on the same cause of action between the same parties.  Because the

11

criteria for applying the doctrine of *res judicata* are evident in this case, the court finds that Plaintiffs' § 502(a)(1)(B) claim is barred.

### VIII.  ORDER

Accordingly, it is CONSIDERED and ORDERED that summary judgment, as *sua sponte* revisited by the court on the ground of *res judicata*, be and the same is hereby ENTERED in favor of Defendant Boyd F. Campbell on Plaintiffs' § 502(a)(1)(B) claim. A final judgment shall be entered separately.

Done this 12th day of May, 2008.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE